SPITLER, ADMR., APPELLANT, *v.* STATE AUTO MUTUAL, INC.,
ET AL., APPELLEES.

[Cite as Spitler v. State Auto Mut. (1980),
61 Ohio St. 2d 242.]

(No. 79-535 — Decided February 20, 1980.)

*Messrs. Hayward, Cooper, Straub, Walinski & Cramer* and *Mr. Cary Rodman Cooper,* for appellant.

*Messrs. Hanna & Hanna* and *Mr. Drew A. Hanna,* for appellee State Auto Mutual, Inc.

*Messrs. Robison, Curphey & O'Connell, Mr. John M. Curphey* and *Mr. Timothy D. Krugh,* for appellee Motorists Mutual Insurance Company.

WILLIAM B. BROWN, J.   The issue presented is whether the trial court correctly determined there to be no genuine issue as to the insurance carriers' bad faith representation or breach of contract, justifying judgment for the insurance carriers as a matter of law.

244

## I.

This court's most recent opinion on the requirements for an insured's recovery of damages from a judgment in excess of policy limits, *Wasserman* v. *Buckeye Union Cas. Co.* (1972), 32 Ohio St. 2d 69, supports the trial court's ruling in connection with the tort claim. In *Wasserman*, this court, relying on *Slater* v. *Motorists Mutual Ins. Co.* (1962), 174 Ohio St. 148, paragraphs one and two of the syllabus, sustained a jury instruction defining bad faith as "embrac[ing] more than bad judgment or negligence," and as equivalent to fraud, deceit, or dishonest purpose, etc.[2] In the instant cause, the administrator's evidence, consisting of (1) the insurance carriers' decision not to appeal the judgment in the action brought by Euler; (2) their failure to notify the administrator of this decision;[3] and (3) a series of allegations concerning the inadequacy of their efforts to settle and defend,[4] is not probative of bad faith as herein defined. *Wasserman, supra,* at page 73. Thus, there was no genuine issue as to the insurance carriers' tort liability.

## II.

The administrator alternatively argues that summary judgment was improper because the insurance carriers had a

---

[2] The jury instruction in *Wasserman* quoted verbatim from paragraph two of the syllabus in *Slater*, which reads:

"A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."

[3] The insurance carriers contend that they did not appeal the judgment because the award was merely unexpected, and not so excessive that it was likely to be set aside on appeal. Since liability was conceded, there was thus little reason to appeal. Additionally, since the insured herein was a bankrupt estate, the conflict of interest normally attending this situation was absent. See *Bourget* v. *Government Employees Ins. Co.* (C.A. 2, 1972), 456 F. 2d 282. In any event, the insurance carriers' decision to forego appeal and their failure to notify the administrator of this decision are "no more than negligent conduct which does not constitute 'bad faith' under the standards set by this court." *Wasserman, supra,* at page 73.

[4] The administrator argues in effect that the insurance carriers should have settled because they knew or should have known the damage award would exceed their policy limits, and also argues that they failed to communicate or cooperate in defending the action. These allegations do not raise the issue of bad faith.

contractual duty to defend the insolvent estate with due care. He contends that evidence properly before the trial court demonstrated a genuine issue as to whether the insurance carriers' conduct satisfied this stricter standard.

The trial court held that an action for damages resulting from a judgment in excess of policy limits could not be maintained in contract, while the Court of Appeals held that even if such action could be maintained in contract, the bad faith standard, as defined in *Wasserman, supra,* would nevertheless apply. Thus, both courts granted summary judgment because they ruled that bad faith, as to which there was no genuine issue, was a prerequisite to the insurance carriers' liability.

We sustain the courts' rulings but limit our holding to the covenants with which we are faced. Both insurance policies stipulate merely that the insurer "shall defend any suit,"[5] without delineating the applicable standard of conduct. Pursuant to such a covenant an insurer has a mandatory duty to defend, but if such defense is commenced the applicable standard is "bad faith," as defined in *Wasserman, supra.*

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., HERBERT, P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

---

[5] In relevant part, these covenants to defend provide that an insurer "shall defend any suit alleging such bodily injury or property damage which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent***."