OPINION
Plaintiff-appellant Ronald Morland appeals the decision of the Noble County Common Pleas Court which granted partial summary judgment in favor of defendant-appellee Allstate Insurance Company. For the following reasons, the trial court's judgment is affirmed.
 STATEMENT OF FACTS
On October 4, 1993, Andrea Wood ["tortfeasor"] caused a car accident which resulted in injuries to appellant. Appellant was admitted to the emergency room where he complained of pain in his neck, back and knee and a cut on his forehead. Appellant made these same complaints to his family doctor during four visits following the accident. After being referred to a neurologist, appellant complained of pain in his hands and wrists and was diagnosed with pre-existing carpal tunnel syndrome ["CTS"]
Appellant then filed a claim with the Bureau of Workers' Compensation ["the Bureau"] alleging that his CTS was a result of the repetitive hand motions that he performed in his work as a machinist. Appellant submitted forms filled out by another doctor who stated that the CTS was a result of employment but was aggravated by the car accident. Yet another doctor reported that appellant claimed to have no CTS symptoms prior to the accident. Finally, the Bureau sent appellant to an independent medical examiner who stated that appellant's mild symptoms prior to the crash did not constitute sufficient evidence for him to conclude that the CTS was preexisting. Thereafter, the Bureau denied appellant's workers' compensation claim.
During this time, appellant had been negotiating with tortfeasor's insurer, Grange Mutual Insurance Company. The limit on tortfeasor's liability policy was $50,000 per person. Additionally, appellant had his own underinsured motorists policy through Allstate with a policy limit of $25,000 per person. Appellant had already received the $5,000 maximum under the medical payments portion of his policy with Allstate. In late 1996, Grange offered $45,000 to appellant for settlement of his claims against tortfeasor. Allstate gave its consent for appellant to accept this settlement offer.
In December 1996, appellant's attorney wrote a letter to Allstate seeking the per person limit under the underinsured motorist policy. In February 1997, Allstate opined that appellant's claim was not worth more than the $45,000 that Grange paid to appellant. Allstate explained that wage loss information had not been provided and that it would like a medical release in order to review the preexisting CTS and any prior history of back or neck problems. Appellant's attorney responded with a demand letter requiring a favorable response within ten days in order to avoid the filing of a lawsuit.
When Allstate failed to respond to the aforementioned ultimatum, appellant filed suit alleging breach of contract and bad faith. Allstate moved for partial summary judgment on the bad faith claim and the accompanying request for punitive damages. The trial court granted partial summary judgment in January 1998. The case then went to trial, and the jury returned a verdict for appellant on his breach of contract claim.[1] The verdict was journalized on March 2, 1999. Allstate then paid appellant $25,000 representing the limits of the underinsured motorist policy. Appellant now timely appeals the trial court's order of partial summary judgment.
 ASSIGNMENT OF ERROR NUMBER ONE
Appellant sets forth two assignments of error, the first of which alleges:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF BAD FAITH."
Appellant argues that the court improperly granted partial summary judgment in favor of Allstate. Pursuant to Civ.R. 56 (C), summary judgment shall not be granted unless the court determines that: (1) no genuine issue of material fact remains to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears that reasonable minds can only come to a conclusion that is adverse to the nonmovant. In reviewing summary judgments, reviewing courts apply a de novo standard of review.Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107,108.
Thus, we must determine whether the movant, Allstate, met its initial burden of informing the trial court of the basis for its summary judgment motion by identifying the portions of the record that demonstrate the absence of a genuine issue for trial on the bad faith claim. See Dresher v. Burt (1996), 75 Ohio St.3d 280,293. If this burden has been met, then we must determine whether the nonmovant, appellant, met his reciprocal burden to set forth specific facts showing that there is a genuine issue for trial on his bad faith claim. See Id.
Because an insurer owes a duty of good faith to its insured when it processes and pays or denies a claim, an insured may sue for a breach of this duty by instituting a bad faith cause of action. Staff Builders, Inc. v. Armstrong (1988), 37 Ohio St.3d 298,302. In this context, bad faith exists when an insurer acts without reasonable justification under the circumstances. Zoppov. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, 554. There is a lack of reasonable justification where an insurer refuses to pay a claim in an arbitrary or capricious manner. Hart v. RepublicMut. Ins. Co. (1949), 152 Ohio St. 185, 188, reaffirmed in Zoppo.
Allstate contends that reasonable minds can only find that it did not act without reasonable justification when it opined that appellant's claim was not worth more than $45,000. Allstate points to the evidence which supports its allegation that appellant's CTS predated the car accident. For instance, appellant filed a workers' compensation claim where he stated that his CTS was a result of the repetitive hand movements required by his employment. Additionally, appellant did not report problems with his hands and wrists when in the emergency room or during his four visits to his family doctor after the accident. When appellant did mention his CTS problems to a neurologist, he stated that some symptoms, such as numbness, predated the accident. Allstate emphasizes that the deposition of this neurologist states that appellant's CTS was preexisting and that for CTS to result from sudden trauma would require wrist fracture or dislocation. Appellant's deposition also admits to experiencing some CTS symptoms prior to the car accident. From this evidence, we must conclude that Allstate met its initial burden in proving that rational minds could only conclude that Allstate had reasonable justification for denying appellant's claim on the information provided to it at that juncture.
In an attempt to meet its reciprocal burden, appellant urges that Allstate's decision was unreasonable because three doctors and the Bureau decided that appellant's CTS was caused by the car accident. However, this statement is not accurate. Timothy Duffey, D.O. treated appellant and reported that the CTS was caused by the accident. He specifically based his conclusion on the fact that appellant denied preexisting CTS symptoms. On the contrary, David Ashcraft, D.O. advised the Bureau that appellant's CTS predated the accident but that the accident aggravated the CTS. Furthermore, independent medical examiner Nicholas Varrati, M.D. wrote a report that indicated that appellant did have some mild symptomatology prior to the car accident. Dr. Varrati's report stated that appellant denied experiencing numbness before the accident but only experienced occasional stiffness. Neurologist Robert Thompson, M.D. wrote a report which stated that appellant admitted that he experienced numbness before the accident. From these reports, one notices inconsistencies in the frequency and timing of symptoms as explained by appellant to the various physicians. One also notices inconsistencies in the physicians' opinions with regards to the cause of CTS.
From this conflict of evidence it is abundantly clear that the material fact in dispute is whether or not the automobile collision was the proximate cause of the creation or aggravation of the CTS suffered by appellant. That issue was preserved pursuant to the breach of contract prong of the complaint filed by appellant which ultimately resulted in a favorable verdict for appellant. However, the very factual dispute that operated to get his breach of contract claim to the jury[2] also operated to preclude his bad faith claim. Stripped to the bare essentials, the central factual issue in the bad faith claim is whether or not Allstate had a reasonable basis to deny appellant's claim.
As aforementioned, many portions of the record tend to support Allstate's belief that appellant's CTS and possibly some of appellant's back problems were antecedent to the car accident. Thus, the evidence shows that the claim was, at the very least, "fairly debatable." See Tokles Son, Inc. v. Midwestern Indem.Co. (1992), 65 Ohio St.3d 621, 630-631, overruled in part on other grounds by Zoppo. The evidence also demonstrates that reasonable minds could only conclude that Allstate's decision was not arbitrary or capricious but was based upon a reasonable justification. Finally, we note that it is quite proper for a trial court to decide as a matter of law that there is a reasonable justification for an insurance company's actions based upon a conflict of evidence. Hence, the trial court's entry of summary judgment for Allstate on appellant's bad faith claim is upheld. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error provides:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES BASED UPON ITS FINDING THAT NO GENUINE ISSUE OF MATERIAL FACT REMAINED FOR THE JURY."
Punitive damages cannot be awarded in contract actions unless the conduct constituting the breach is also a tort for which punitive damages are recoverable. Lake Ridge Acad. v. Carney
(1993), 66 Ohio St.3d 376, 381. "Punitive damages may be recovered against an insurer that breaches its duty of good faith in refusing to pay a claim of the insured upon proof of actual malice, fraud or insult on the part of the insurer." Zoppo at 557, quoting Staff Builders, Inc. v. Armstrong (1988), 37 Ohio St.3d 298, paragraph two of the syllabus. However, this case only proceeded on appellant's breach of contract claim. Appellant's brief basically concedes that this assignment of error only has merit if we sustain his first assignment of error, which we did not. See Appellant's Brief at 9. In light of this court's ruling that summary judgment was proper on the bad faith claim, summary judgment was also proper on the demand for punitive damages. Therefore, this assignment of error is overruled.
For the foregoing reasons, the trial court's decision which granted partial summary judgment in favor of Allstate on the issue of bad faith is hereby affirmed.
DONOFRIO, J., concurs.
WAITE, J., concurs.
APPROVED:
 ___________________________________ JOSEPH J. VUKOVICH, JUDGE
[1] Appellant's wife had a derivative claim for loss of consortium. However, the jury did not find in her favor.
[2] We note that, in apparent recognition of the clear factual dispute, neither of the parties moved for summary judgment.