This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants, Joseph and Janet Petrone, appeal from the decision of the Summit County Court of Common Pleas, which granted the motion for partial summary judgment of Appellee, Grange Mutual Casualty Co. ("Grange"). We reverse and remand for further proceedings consistent with this opinion.
 I.
The Petrones contracted with Grange in 1995 to provide homeowner's insurance for the Petrones' property in Stow, Ohio. The Petrones renewed the policy from year to year. The policy contained an endorsement, the HO 520 endorsement, regarding replacement value for personal property. The policy was in effect on April 14, 1998, when a fire occurred at the Petrone residence, damaging most of their personal property. As the Petrones replaced items of personal property, they sought payment of the replacement cost pursuant to the policy. On December 9, 1998, Grange notified the Petrones that because more than 180 days had passed since the loss, Grange would no longer pay replacement cost and would only pay the actual cash value. From that time on, the Petrones received only the actual cash value of the property.
The Petrones filed a complaint against Grange, alleging nine causes of action. The Petrones filed a motion for summary judgment on their breach of contract and declaratory judgment claims. Grange filed a motion for partial summary judgment on the Petrones' claim for bad faith. The trial court granted the Petrones' motion for summary judgment on the breach of contract and declaratory judgement claims. The trial court further granted Grange's motion for partial summary judgment on the bad faith claim. Grange paid $15,287.04 in full settlement of the breach of contract claim, and the Petrones dismissed the remaining six claims. This appeal followed.
The Petrones raise two assignments of error on appeal. Because these assignments of error are interrelated, we address them together for ease of discussion.
 II. Assignment of Error I "THE TRIAL COURT ERRED BY FAILING TO FIND GENUINE ISSUES OF MATERIAL FACT EXISTED AS TO WHETHER THE DENIAL OF THE INSURED'S CLAIM WAS PREDICATED UPON CIRCUMSTANCES THAT FURNISHED REASONABLE JUSTIFICATION."
 Assignment of Error II "THE TRIAL COURT ERRED AS A MATTER OF LAW IN CONCLUDING THAT THE POLICY LANGUAGE IN QUESTION WAS AMBIGUOUS."
In their two assignments of error, the Petrones challenge the trial court's determination that the insurance policy was ambiguous and the decision to grant summary judgment to Grange on the Petrones' claim for bad faith. The Petrones claim that genuine issues of material fact remain and that, therefore, summary judgment was improper. They further allege that the trial court applied the incorrect law, and relied on "outdated and overruled case law" in making its determination.
We begin our discussion by noting that an appellate court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party.Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12.
Pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. The nonmoving party must then present evidence that some issue of material fact remains for the trial court to resolve. Id. A genuine issue of material fact remains where the evidence is such that a reasonable trier of fact could find for the nonmoving party. Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248,91 L.Ed.2d 202; Barber v. Buckeye Masonry Const. Co. (2001),146 Ohio App.3d 262, 268.
An insurer in Ohio has the duty to act in good faith in the processing and payment of valid claims of its insured. Hoskins v. Aetna Life Ins.Co. (1983), 6 Ohio St.3d 272, 276. Therefore, an insured can bring a cause of action in tort against the insurer for breach of that duty. Id. An insurance company's refusal to pay a valid claim is not conclusive of bad faith; however, if the insurer bases its refusal on a belief that there is no coverage for the particular claim, that belief "may not be an arbitrary or capricious one." Id. at 277, quoting Hart v. Republic Mut.Ins. Co. (1949), 152 Ohio St. 185. Moreover, "the insurer's failure to pay a claim need not involve bad intent or malice to amount to `bad faith.'" Stefano v. Commodore Cove E. Ltd. (2001), 145 Ohio App.3d 290,293. Instead, "[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, paragraph one of the syllabus. See, also, Foster v. State Auto Ins. Co. (Apr. 29, 1998), 9th Dist. No. 18592, at 14.
The Petrones assert that the trial court erred in applying an arbitrary and capricious standard, when the standard in Ohio is reasonable justification. They allege that Zoppo overruled case law which contained the arbitrary and capricious language. In Hart, the Ohio Supreme Court declared that when an insurance company refuses to settle a claim because it believes that there is no coverage, "such a belief may not be an arbitrary or capricious one." Hart, 152 Ohio St. at 188. The Ohio Supreme Court reaffirmed the holding in Hart when it expressly approved and followed Hart in Zoppo. Zoppo, 71 Ohio St.3d at paragraph one of the syllabus. Accordingly, this argument is without merit.
The Petrones next assert that summary judgment was improper because a genuine issue of material fact remains. In support of its motion for partial summary judgment, Grange provided deposition transcripts from George Van Doros, the Grange claims adjuster who processed the Petrones' claims; Chris Parks, the Grange regional claims manager at the time of the fire; and T. Jeffrey Hendrickson, the Grange regional property coordinator at the time of the fire. Each testified that the HO 520 endorsement contained in the Petrones' insurance contract has been interpreted by Grange to provide for replacement value coverage in one of two ways. One way is if the insured replaces the property and then seeks replacement value; the other way is if the insured requests the actual cash value from the insurer first, subsequently replaces the item, and then seeks the difference between the actual cash value already received by them and the amount the insured paid to replace the item. Van Doros, Parks, and Hendrickson each testified that under either of these options, the insured must seek payment within 180 days from the date of loss. Stated another way, Grange interpreted this provision as requiring payment of replacement value only for items replaced within 180 days after the loss.
In opposition to Grange's motion, the Petrones relied on the deposition testimony of Janet Petrone, the language of the contract itself, and the testimony of their proposed expert, Frederick Kreiner. The trial court excluded the testimony of Kreiner, which the Petrones have not challenged on appeal. In her deposition, Janet stated that the policy provided for replacement value and that Van Doros failed to inform them of an exact time limit within which they needed to obtain replacement value. Janet disputes Grange's interpretation of the provision.
The trial court found that the language of the HO 520 endorsement was ambiguous and construed the provision in favor of the Petrones. The trial court then found that there was no evidence "which could lead reasonable minds to conclude that the conduct of Defendants was arbitrary or capricious" and entered summary judgment in favor of Grange on the Petrones' bad faith claim.
If an insurance contract is clear and unambiguous, its interpretation is a question of law. Red Head Brass, Inc. v. Buckeye Union Ins. Co. (1999), 135 Ohio App.3d 616, 627; Beaver Excavating Co. v. United StatesFid. Guar. Co. (1998), 126 Ohio App.3d 9, 14. In interpreting insurance policies, as with other written contracts, we look to the terms of the policy to determine the intention of the parties concerning coverage.Minor v. Allstate Ins. Co., Inc. (1996), 111 Ohio App.3d 16, 20. We must give the words and phrases in the policy their plain and ordinary meaning. Id., citing State Farm Auto Ins. Co. v. Rose (1991),61 Ohio St.3d 528, overruled on other grounds, Savoie v. Grange Mut.Ins. Co. (1993), 67 Ohio St.3d 500, paragraph one of the syllabus.
The HO 520 endorsement contained in the Petrones' policy provides:
"Personal Property Replacement Cost Coverage
 "We have extended Coverage C, Personal Property, to include the full cost of repair or replacement with similar items, without deduction for depreciation, subject to the following terms:
"* * *
 "We will not pay for loss under this endorsement until actual repair or replacement is made. You may disregard this condition and we will pay the actual cash value, but you have the right to make further claims within 180 days after date of loss for any additional amount incurred because of the above policy conditions."
The plain and ordinary meaning of the terms of this provision require the Petrones to replace their property before Grange will pay replacement value. The next sentence, however, stating "you may disregard this condition and we will pay the actual cash value," allows the Petrones to disregard the requirement that repair or replacement occur before payment. In that instance, they can receive actual cash value prior to replacement. Should the Petrones choose this option, they would "have the right to make further claims within 180 days after date of loss for any additional amount incurred because of [these] policy conditions," allowing them the option to receive the difference between actual cash value and replacement value from Grange, provided that they replace the property and submit their claim for the difference within the stated time limit, 180 days after the loss. A reading of the provision reveals that the 180-day time limit applies only to claims for the difference in values for property for which Grange paid actual cash value prior to the Petrones repairing or replacing the property. Thus, we find that the HO 520 endorsement is not ambiguous in reference to the 180-day time limit for claims concerning the replacement value of the Petrones' personal property. Accordingly, the Petrones' second assignment of error is sustained.
Given the plain and ordinary meaning of the language used in the HO 520 endorsement, we find that there is a genuine issue of material fact as to whether Grange's interpretation of the provision constitutes a reasonable justification for its refusal to pay the Petrones' claims. Accordingly, the trial court erred when it granted Grange's motion for partial summary judgment on the bad faith claim. The Petrones' first assignment of error is sustained.
 III.
Having sustained the Petrones' two assignments of error, we reverse the decision of the Summit County Court of Common Pleas and remand the cause for further proceedings consistent with this decision.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
CARR, J., WHITMORE, J. CONCUR.